**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**JAY VERNON MOSS,**

      **Plaintiff,**

**vs.**                                                                  **CASE NO. 3:08CV351-MCR/AK**

**T. GRADIA,**

      **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging that Defendant retaliated against him by terminating his job assignment as an inmate law clerk when he assisted another inmate in filing a grievance against her. (Doc. 12). Defendant moved to dismiss, which was construed as a motion for summary judgment (doc. 24), and Plaintiff has responded. (Doc. 35).

**I.     Amended Complaint**

Plaintiff claims that he was assigned to the law library at Century Correctional Institution under the supervision of Defendant Gradia and had excellent job performance ratings and no history of institutional violations when she had him terminated from the position on March 21, 2008, in retaliation for helping other inmates file grievances against her. He also claims that she altered his performance ratings to show them as unsatisfactory and reduced his gain time from 20 days to 0 days.

Plaintiff describes an incident involving Inmate Sylvester Brown, whom he alleges was denied legal copies by Defendant and whom he helped file a grievance against her on this issue. Plaintiff claims that Defendant had denied numerous inmates their copy requests, particularly to attach evidentiary materials to post-conviction motions, and this was contrary to administrative and court rules. When he confronted Defendant with the rules, allegedly she threatened his job, and on March 21, 2008, he was denied access to the law library to work.

Plaintiff claims that he was engaged in a protected activity, helping other inmates access the courts, and Defendant retaliated against him for engaging in this activity by terminating his employment and denying him gain time without a legitimate penological interest.

Plaintiff seeks declaratory relief, restoration of his gain time, nominal damages and costs.

## II.    Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299

**No. 3:08cv351-MCR/AK**

(11th Cir. 2002). The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998), quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or

other evidentiary materials must be accepted as true for purposes of summary

judgment.  <u>Gauck v. Meleski</u>, 346 F.2d 433, 436 (5th Cir. 1965).

## III.    Defendant's Relevant Evidence

In response to Plaintiff's inquiry about his job and request for return of

satisfactory job rating and gain time, the Warden referenced Fla. Admin. Code §33-

501.301 (7)(i) which provides:

(i) Prohibited conduct: inmate law clerks. Violation of any of the provisions of this section shall result in the immediate removal of the inmate law clerk from his or her work assignment in the law library, and disciplinary action pursuant to Rules 33-601.301.314, F.A.C. The library services administrator will be informed whenever an institution removes an inmate law clerk from the law library for any of the following reasons:
1. Inmate law clerks shall not act as legal representatives or in any way appear to be engaged in the unauthorized practice of law, to include participation in judicial and administrative hearings or telephonic hearings conducted for other inmates;
2. Inmate law clerks shall not sign or include their names, work assignment title, or a reference to certification as an inmate law clerk or trained paralegal in any legal document, legal mail, privileged mail, routine mail, or grievance prepared on behalf of an inmate;
3. Inmate law clerks shall not include their work assignment title or a reference to certification as an inmate law clerk or trained paralegal in the return address of their outgoing correspondence, or in legal document, legal mail, privileged mail, routine mail and grievances;
4. Inmate law clerks shall not use department or institution letterhead stationery or memoranda to prepare personal letters or legal documents;
5. Inmate law clerks shall not charge nor shall they receive payment of any kind for providing legal assistance to inmates;
6. Inmate law clerks shall not disclose information about an inmate's legal work to other inmates;
7. Inmate law clerks shall not conduct legal research or prepare legal documents for staff; and
8. Inmate law clerks shall not display an unwillingness to work and cooperate with others or refuse or fail to perform the general duties of that work assignment. Such conduct shall be defined as a failure to follow departmental rules and procedures relating to law library program operations, or violation of the rules of prohibited conduct, Rule 33-601.314, F.A.C., while in the law library or performing work-related tasks.

**No. 3:08cv351-MCR/AK**

The warden explained that Plaintiff was removed because he displayed an unwillingness to work and cooperate with others and refused or failed to perform the general duties of the work assignment; specifically, that he refused to work with inmates with certain sensitive charges and he became increasingly argumentative in reference to copy rules. Although he could have been written a DR, he was just removed from the library and did not earn gain time because his work was unsatisfactory.

A grievance appeal response included Defendant Gradia's explanation for his job termination:

> According to Officer Gradia it was part of your job to help inmates file grievances. She did not have a problem with that. What she did have a problem with was when you continually tried to manipulate the systems rules to issue copies of case law when filing specific motions that did not require copies of attachments. Not only were you relieved form this assignment but another inmate that did the same thing was also relieved. Therefore, I am denying your grievance.

In her affidavit, Defendant Gradia further explained that Plaintiff failed to observe rules regarding copies of evidentiary materials and the Department policy that copies of such materials would not be provided at the post-conviction relief stage of the proceedings. She attempted to counsel with him that this was not her rule, but a rule she was to follow, and he refused to comply with it and continued to argue with her. She discussed his termination with her supervisor on March 21, 2008, and it was decided to terminate Plaintiff and another inmate for the same reason.

**No. 3:08cv351-MCR/AK**

**IV.    Plaintiff's Evidentiary Materials (doc. 35)**

a)    <u>Affidavit of Plaintiff (doc. 35 exhibit)</u>

Plaintiff relates that he was certified as a law clerk in 1994 and had never received a disciplinary report related to his job.  He relates that on March 17, 2008, he was helping Inmate Sylvester Brown at the law library and Brown had been denied copy service by Defendant on the basis that inmates are not allowed to attach evidentiary materials to their post-conviction motions.  Plaintiff then instructed Brown to show Defendant the copying service rules, which he contends required her to make copies of evidentiary materials for service upon judicial or administrative bodies.  She again refused to make the copies for Brown and called Plaintiff into her office where she told him she would terminate him if he showed inmates the rules again and he "expressed disagreement" with her interpretation of the rules and policies.  He was told that he would have a job change if he undermined her authority again and did not do as he was told.  Plaintiff then told her again that she was wrong about copying evidentiary materials for post-conviction motions and showed the rules to other inmates.  He then helped Brown prepare a grievance against her on March 18, 2008, and on March 27, 2008, after Defendant received Brown's grievance, he was terminated at the library.

Plaintiff further attests that he was notified on April 11, 2008,that he had earned 0 days gain time for March and that his job performance was no longer satisfactory.  On September 26, 2008, he was transferred to Dade CI.

**No. 3:08cv351-MCR/AK**

b)    <u>Affidavit of Sylvester Brown (doc. 35, exhibit A)</u>.

Inmate Sylvester Brown claims that he requested copies of "appendices" to his Rule 3.850 motion and Defendant denied his request. Inmate Moss showed him the copying rules and based on them he filed a grievance against Defendant on March 18, 2008. Defendant told him she had received the grievance on March 26, 2008, and on March 28, 2008, Inmate Moss was fired.

c)    <u>Inmate Request dated March 27, 2008 (doc. 35, exhibit B)</u>

Plaintiff requests a reason for his job termination and the response was that no further explanation was necessary.

d)    <u>Inmate Request dated March 30, 2008 (doc. 35, exhibit C)</u>

Plaintiff asked for access to the law library, but was told to provide his work schedule and see his supervisor.

e)    <u>Inmate Management Plan and Performance Results (doc. 35, ex. D)</u>

The performance results fro 4/18/07 to 4/1/08 show his work assignment rating as above satisfactory, but that his current job assignment was "unassigned."

f)    <u>Inmate Notice dated April 11, 2008 (doc. 35, exhibit E)</u>

Indicates that his assignment performance for march 2008, was "unsatisfactory for "conduct in PGM/WRK assignment, and that his gain time recommendation was 00.

g)    <u>Inmate Request dated May 20, 2009 (doc. 35, exhibit F)</u>

Plaintiff requests information about his law clerk certification and that he be assigned as law clerk at Dade CI (where he had been transferred). He was told he was listed as a certified law clerk and his name would be put on the list for job assignment.

**No. 3:08cv351-MCR/AK**

h) <u>Inmate Request dated August 21, 2009 (doc. 35, exhibit F)</u>

Plaintiff requested to be given law clerk assignment and was told they would check into his request.

(i) <u>Informal Grievance dated September 8, 2009 (doc. 35, exhibit G)</u>

Plaintiff complains that the policy statement posted in the Dade CI library concerning copying rules was wrong and that the library must provide copies every day it is open and he requests that the impermissible policy statement be removed.

The response cites 501.302 and states that the library is permitted to have a copying schedule of services so long as it does not conflict with any administrative or judicial rule or order.

j) <u>Defendant Gradia's Answers to Plaintiff's Interrogatories (exhibit H)</u>

**V.  Analysis**

a) <u>First Amendment</u>

A claim that a plaintiff was penalized for the exercise of a specific constitutional right is properly considered under the First Amendment.  <u>See</u> <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 387 (6th Cir. 1999) (<u>en</u> <u>banc</u>).  To state a retaliation claim, a plaintiff must establish three elements: (1) that his speech or act was constitutionally protected; (2) that the defendants' retaliatory conduct adversely affected the protected speech or act; and (3) that there is a causal connection between the retaliatory actions and the adverse affect.  <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1250 (11th Cir. 2005).  It is well settled law that the First Amendment protects inmates from retaliation by prison officials

for filing administrative grievances and lawsuits.  Green v. Mowery, 212 Fed. Appx. 918,

919 (11th Cir. 2006); Redd v. Conway, 160 Fed. Appx. 858, 862 (11th Cir. 2005).

Defendant argues that a prisoner has no standing to litigate another inmate's

right to access the court, specifically an inmate law clerk may not claim First

Amendment protection on behalf of another inmate he is assisting, citing Adams v.

James, 784 F.2d 1077, 1079 (11th Cir. 1986), a case closely on point with the facts

alleged herein.  In Adams, prison inmate law clerks challenged their dismissal from their

jobs as law clerks and subsequent transfer to another allegedly more punitive institution

on First Amendment grounds.  Id., at 1078.  The prison asserted that they had violated

policy and regulations.  The court held that while prisoners do not have a protected

interest in maintaining their jobs as law clerks nor in their status or placement at a

particular institution, prison officials cannot grant or withhold assignments or otherwise

retaliate against an inmate for exercising a constitutional right.  Id., at 1079.  However,

the court found that the constitutional right protected must be personal to the inmates,

and that no first amendment claim had been made by the inmate law clerks since they

had no standing to complain about another inmate's access to the courts.  Id., at 1081.

In his response to Defendant's motion, Plaintiff characterizes his First

Amendment claim slightly differently, alleging that his First Amendment right is of free

speech, not access to the courts, specifically that he had a constitutional right to criticize

Defendant and that the matter of copying policy was "a matter of public concern to the

prison population and was constitutionally protected."  (Doc. 35, p. 13).

**No. 3:08cv351-MCR/AK**

A First Amendment claim based on free speech by an inmate does not fail simply because it is asserted on behalf of others.  Adams, supra at 1081.  However, to prevail on a free speech claim, a prisoner must show that his speech was protected; that the alleged retaliatory action would likely deter a person of ordinary firmness from engaging in such speech; and that there was a causal connection between the retaliatory action and the protected speech.  See Smith v. Mosley, 532 F.3d 1270, 1277 (11th Cir. 2008).

It is an established principle of constitutional law that an inmate is exercising his First Amendment right to freedom of speech when he complains to prison officials about conditions of his confinement.  Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).  However, if affording protection to the particular type of speech would be inconsistent with the inmate's status as a prisoner or interfere with the legitimate penologicial objectives of the institution, the speech is not protected.  Smith, supra at 1277.  Further, if a prisoner violates a prison regulation when engaging in "free speech," this is not "protected" and fails to establish the first element of a retaliation claim.  Id., citing Thaddeas -X v. Blatter, 175 F.3d 378, 395 (6th Cir. 1999).

The undersigned finds that Plaintiff's alleged right to criticize Defendant and complain about copying policy is both inconsistent with his status as a prisoner and in violation of Rule 33-501.301 of the Florida Administrative Code.  There are clear penological issues with an inmate criticizing his work supervisor and taking actions contrary to her directions.  Regardless of Plaintiff's interpretation of the copying regulations, Defendant was his supervisor and he must adhere to her authority in the law library.  As he alleges she told him, he cannot undermine her authority in the library,

**No. 3:08cv351-MCR/AK**

and he would be reassigned if he continued. Plaintiff admits that he gave the copying policy to other inmates, after Defendant told him not to, and he also admits he continued to argue with her after she told him to stop. The prison regulations clearly required inmate law clerks to cooperate and to perform their work duties as directed.

Thus, considering both First Amendment arguments made by Plaintiff, he is precluded from asserting a denial of access to courts claim because he has no standing to complain about another inmate's grievance filing and he cannot assert a claim for denial of free speech because the speech threatened a legitimate penological objective and violated a prison regulation. Thus, he fails on the first element of a retaliation claim.

As to the second element, the Eleventh Circuit has adopted an objective test as the standard for determining whether there has been an adverse affect.[1] Id., at 1251. Under this analysis "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Id., at 1250, *quoting* Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474 (4th Cir. 2005). This test is applicable to prisoners' claims of retaliation as well. Bennett, *supra* at 1253, n.6.

The Court agrees with the Defendant that the facts simply do not support a finding of adverse affect in that Plaintiff filed six grievances against Defendant Gradia

---

[1] A minority of circuits apply a subjective test under which the Plaintiffs have to show that they were actually chilled in the exercise of their First Amendment rights, but the Eleventh Circuit specifically declined to adopt this standard in favor of the majority view. Bennett, *supra* at 1251.

**No. 3:08cv351-MCR/AK**

after the alleged retaliation and he was, therefore, not deterred from exercising his personal right to access the courts.

Finally, as to the third requirement, a causal link, conclusory allegations of retaliation without "some facts" that would indicate that the retaliatory act (firing him from his job as inmate law clerk) was in retaliation for filing grievances is not sufficient. See White v. Thompson, 2007 WL 2324613 (S. D. Ga. 2007). See also Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (prisoner may establish retaliation by "demonstrating that the prison official's actions were `the result of his having filed a grievance concerning the conditions of his imprisonment.'"). The allegations must be more than "general attacks" upon a defendant's motivations, Plaintiff must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998) (citations omitted). A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision "subject to exhaustive challenge," solely because he was engaged in a First Amendment right. Adams, supra at 1082. Even though prison officials do not have the authority to prohibit inmates from filing grievances it does not follow that every time an inmate files a grievance the act of doing so renders the exercise of prison authority suspect. Id., at 1082. Indeed, while mindful that a plaintiff may not be held to a heightened burden of proof, see Crawford-El, 523 U.S. at 580-86 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives), courts should approach prisoner claims of retaliation "with

skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions of prison officials and "the ease with which claims of retaliation may be fabricated." Dawes v. Walker, 239 F.3d 489, 491 (2nd Cir. 2001), impliedly overruled in part on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Plaintiff contends that he helped one named inmate, Sylvester Brown, in filing a grievance against Defendant for not providing him copies. He alludes to "others," but provides no specific facts to support that he assisted in filing more than this one grievance. Given Defendant's position as law librarian, it is inevitable that she would be the subject of inmate grievances related to her decisions at the library and that the inmate law clerks under her supervision would be assisting in such filing since that was part of their job duties. Plaintiff's argument that this so angered her that she retaliated by firing him, an otherwise competent and knowledgeable law clerk, is not convincing given the other facts that he and Defendant both agree upon, i.e. that he argued with Defendant over the law library rules, that he took actions contrary to her directives, and he informed other inmates that she was wrong about policy. Prison regulations prohibited such conduct and authorized removal from his job assignment for such behavior, and the undersigned does not find that he has carried his burden of showing a retaliatory motive given these circumstances.

Thus, Plaintiff has failed to state a First Amendment claim under either theory he proposes.

**No. 3:08cv351-MCR/AK**

b)      Relief

Defendant is correct that any injunctive relief sought has been rendered moot by Plaintiff's transfer to another facility. See Rowan v. Harris, 2008 WL 54877, 316 Fed. Appx. 836 (11th Cir. 2008).

His claim for gain time to be restored is also moot because he is serving a life sentence. See Osterback v. Crosby, 2004 WL 964139 (M. D. Fla. 2004) (prisoners serving life sentences may earn gain time "on paper," with potential benefit from this if granted executive clemency, but such a "loss" is too speculative to give rise to a protected interest); Tal-Mason v. State, 700 So. 2d 453, 455 ( Fla. 4th DCA 1997); Jackson v. FDOC, 790 So.2d 398, 400 (Fla. 2001).

c)      Qualified Immunity

Plaintiff is suing Defendant in her individual capacity only (see Doc. 12, p. 1; Doc. 35, p. 11) and she is asserting qualified immunity as a defense. Specifically, Defendant asserts that Plaintiff has failed to carry his burden of showing that she violated a clearly established constitutional or federal law. See Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)(burden on Plaintiff to show an established right was violated). Citing Adams, supra, Defendant argues that Plaintiff has failed to allege a First Amendment violation because the right to access the courts belonged to another inmate. Further, Defendant argues that her actions in terminating his employment were reasonable in light of the factual context of the case.

Qualified immunity protects a government official who was performing discretionary functions from a trial and other burdens of litigation. Saucier v. Katz, 533

U.S. 194, 200 (2001). It operates to shield defendants from liability for damages if their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 739 (2002) quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This immunity protects officials from the sometimes hazy border between constitutional and unconstitutional actions. Saucier, supra at 206. It protects "all but the plainly incompetent or one who is knowingly violating the federal law." Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001). The Supreme Court in Saucier recognized that:

> It is sometimes difficult for an officer to determine how the relevant legal doctrine [] will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular [action] is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

Saucier, supra at 205.

There is a two part test for determining whether qualified immunity applies: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right; and (2) whether the right was clearly established at the time of the alleged violation. Id., at 201. Federal courts are not required to conduct this analysis in any particular order, but may, in their discretion and in light of the specific context of the case, decide which prong of the inquiry to address first. Pearson v. Callahan, 555 U.S. ___, 129 S.Ct. 808 (2009). The facts are taken in the light most favorable to the Plaintiff in assessing whether the officer's conduct violated a constitutional right. Saucier, supra at 201; Skrtich v. Thornton, 280 F.3d 1295, 1306 (11th Cir. 2002). While the defense of qualified

**No. 3:08cv351-MCR/AK**

immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss. St.George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002); Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). The motion to dismiss will be granted if the "complaint fails to allege the violation of a clearly established constitutional right. Id.

In assessing the second prong of the test, the Supreme Court has held that qualified immunity does not require that there be materially similar cases, only that the unlawfulness of an act or omission be apparent in light of pre-existing law. Hope, supra. Although Plaintiff argues that the unlawfulness of Defendant's actions in firing him was "apparent," the Court does not find this to be so. (See Doc. 35, pp. 2-3). The Eleventh Circuit has held that the critical inquiry in determining whether law is "clearly established" is whether the defendants had "fair warning" that their conduct was unlawful. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002). The Court of Appeals explained that "fair and clear notice" can be given in several ways. First, a federal statute or constitutional provision may be so clear, and the challenged conduct so bad, that caselaw is unnecessary to put someone on notice that the conduct is unlawful. Id. Thus, governmental officials can be deprived of qualified immunity in the absence of caselaw. Id. Second, caselaw announcing general principles of law that are not tied to particularized facts may provide sufficient notice that certain conduct under a different set of facts is illegal. Id. at 1351. Last, in some circumstances, a very high degree of prior factual particularity may be necessary to provide sufficient warning that certain conduct is unlawful. Id. at 1351-52.

**No. 3:08cv351-MCR/AK**

Again, the particularized facts here show that Defendant was not on notice that firing Plaintiff for arguing with her about policy was unlawful. Defendant had the Florida Administrative Code to support her authority to fire him for the exact conduct he admits to engaging in. Also, well established constitutional law provided that inmates had no protected interest in any particular job assignment. Plaintiff admits that he "expressed his disagreement with Defendant" and "admits to the contextral [sic] correctness of Plaintiff's argumentive [sic] comments concerning the rule, procedure, policies and his job related task as a certified law clerk." (Doc. 35, p. 5). Thus, the law supported Defendant's actions even under the version of facts alleged by the Plaintiff.

Plaintiff's argument that the rules required the supervisor to report whenever an inmate is removed as a law clerk to protect his due process rights is not well taken. There is no due process right to any particular job assignment and the administrative rules referenced do not mention due process, just that the removal must be reported. See Adams v. James, 784 F.2d 1077, 1079 (11th Cir. 1986).

Thus, the undersigned is also of the opinion that Defendant Gradia is shielded from liability by the doctrine of qualified immunity.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment (doc. 24) be **GRANTED**, and that Plaintiff's amended complaint (doc.12) be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), that she is entitled to qualified immunity, and that the order adopting this report and recommendation direct the clerk of court to

**No. 3:08cv351-MCR/AK**

note on the docket that this cause was dismissed pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii).

      **IN CHAMBERS** at Gainesville, Florida, this 23rd Day of December, 2009.

                                  s/ A Kornblum
                                  **ALLAN KORNBLUM**
                                  **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

      **A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 3:08cv351-MCR/AK**